STATE v. THE GLIDDEN COMPANY.

(Filed 24 March, 1948.)

1. **Constitutional Law §§ 17, 18—**

    The proviso of G. S., 113-172, exempting corporations chartered prior to 4 March, 1915, from the proscription against emptying into streams of the State deleterious or poisonous substances inimical to fish, creates a distinction having no relation to the evil·sought to be remedied and renders the statute unconstitutional for failure to apply alike to all corporations or persons similarly situated. Constitution of N. C., Art. I, Sec. 7; Art. I, Sec. 17.

2. **Constitutional Law § 15½—**

    The Constitution does not preclude classifications based on reasonable distinctions when the law applies uniformly to all members of the class affected.

3. **Constitutional Law § 23: Waters and Watercourses § 3—**

    No right of prescription to pollute its streams can be acquired against the State.

4. **Statutes § 4—**

    A corporation prosecuted for violating a statutory proscription is entitled to assert the unconstitutionality of the statute in its defense.

ERVIN, J., took no part in the consideration or decision of this case.

STATE's appeal from *Gwyn, J.,* November Term, 1947, CALDWELL Superior Court.

This cause was begun by warrant in the recorder's court of Caldwell County and reached the Superior Court of that county on appeal of the

defendant from conviction and fine of $5,000, suspended on condition that defendant, after the 15th day of December, 1947, desist from discharging into the streams and waters of the State, "any substance created from its mining operations."

The warrant was amended in Superior Court by inserting therein the statement that defendant was "a corporation duly chartered on or after the 4th day of March, 1915."

When the case came on for a hearing the defendant, before pleading, demurred to the warrant as not charging a criminal offense, for that the statute on which it is based, to wit: G. S., 113-172, is in violation of Article I, Section 7, of the State Constitution in attempting to confer exclusive or separate emoluments or privileges not in consideration of public services, and Article I, Section 17, guaranteeing due process of law in protection of life, liberty and property. The statute reads as follows:

> "It shall be unlawful to discharge or to cause or permit to be discharged into the waters of the state any deleterious or poisonous substance or substances inimical to the fishes inhabiting the said water; and any person, persons or corporation violating the provisions of this section shall be guilty of a misdemeanor and, upon conviction, be fined or imprisoned in the discretion of the court: Provided, this section shall not apply to corporations chartered either by general law or special act before the 4th day of March, 1915. (1915, c. 84, s. 20; C. S., 1899.)"

Upon inspection of the warrant, the court, being of the opinion that the statute under which it is brought violates the Constitution in the respects pleaded, sustained the demurrer and dismissed the action. The State appealed. G. S., 15-179.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Williams & Whisnant and F. L. Townsend for defendant, appellee.*

SEAWELL, J. Two questions are posed by the appeal: Whether the statute is affected with the constitutional invalidity suggested, and whether the appellee is in position to raise that defense.

It is an old saying that the proof of the pudding is in the eating. If the statute is upheld we shall have the spectacle of one corporation doing things denounced and punishable as crime and another, perhaps side by side on the same stream, doing the same thing with impunity and approval of the law. That situation can hardly be considered exemplary or conducive to what may be called, in Justinian phrase, "dis-

tributive justice." And it has not received the approval of the Court. *S. v. Fowler*, 193 N. C., 290, 136 S. E., 709.

The broad nature of the exception made by the proviso and its lack of useful relation to any purpose which could be attributed to the measure, especially the purported purpose of conserving fish life, is apparent. The exception embraces and immunizes all corporations chartered before the 4th day of March, 1915, without reference to whether the members of the class thus privileged were at that time using the streams to carry off waste products of a deleterious nature, or had any investment which might be impaired by a statutory prohibition, or whether the corporation is domestic or foreign, seated or ambulatory. Corporations chartered prior to March 4, 1915, alone are permitted to pollute the waters, where already engaged, or elsewhere, or, if not, to peruse the map and sit down at any time, at any place, and begin. They thus have a privilege denied to corporations chartered on or after that date and to "any person or persons" whatsoever, without qualification.

If, as suggested, the Legislature had it in mind to compromise the principle of conservation by "scotching" rather than eradicating the evil out of consideration of vested interests and the conveniences heretofore enjoyed in using the streams to carry away poisonous waste products, that is not reflected in the statute. In a law uniformly applicable to all persons engaging in the practice it might have been competent to provide that those already using the streams in that manner might have reasonable time to adjust their operations to the new conditions. But the statute does not contemplate discontinuance of the practice, but merely excepts all natural persons, individuals, partnerships, and newly chartered corporations from the privilege and gives corporations chartered before 1915 a monopoly of the activities which it denounces as offensive, backing it with the strongest weapon the State has in its arsenal of powers,—the police power,—the threat of fine or imprisonment to all those who dare to question it.

"Class legislation" is not offensive to the Constitution when the classification is based on a reasonable distinction and the law is made to apply uniformly to the members of the class affected. Or, as the principle is more often expressed, when the law applies uniformly to all persons in like situation,—which of itself implies that the classification must have a reasonable basis, without arbitrary discrimination between those in like situation.

> "The question always is whether there is any reasonable ground for a classification or whether it is only and simply arbitrary, based upon no real distinction. The authorities are unanimous in their conclusion that the basis on which a classification may validly rest must be reasonable and founded on material differences and substan-

tial distinctions which bear a proper relation to the matters or persons dealt with by the legislation and to the purpose sought to be accomplished." 12 Am. Jur., Constitutional Law, Sec. 485.

"A fundamental principle involved in classification is that it must meet the requirement that a law shall affect alike all persons in the same class and under similar conditions. If a classification in legislation meets the prerequisites indispensable to the establishment of a class that it be reasonable and not arbitrary, and be based upon substantial distinctions with a proper relation to the objects classified and the purposes sought to be achieved, as long as the law operates alike on all members of the class which includes all persons and property similarly situated, it is not subject to any objections that it is special or class legislation, and is not a violation of the Federal guaranty as to the equal protection of the laws. Hence, while classification is proper, there must always be uniformity within the class. If persons under the same circumstances and conditions are treated differently, there is arbitrary discrimination, and not classification.

"In order for a classification to meet the requirements of constitutionality, it must include or embrace all persons who naturally belong to the class. . . . Furthermore, all who are in situations and circumstances relative to the subjects of the discriminatory legislation indistinguishable from those members of the class must be brought under the influence of the law and treated by it in the same way as are the members of the class." *Id.,* ss. 478, 479. *S. v. Fowler, supra.*

"Any classification or discrimination must not be arbitrary or unreasonable; and the legislation must not be discriminatory in the sense of applying unequally to persons pursuing or engaged in the same calling, profession, or business under the same or like conditions or circumstances." 16 C. J. S., Constitutional Law, Sec. 510, p. 1014.

More pointedly applicable to the criminal law in the situation here presented is the text in 16 C. J. S., 1133, Sec. 563:

". . . a statute or ordinance is void as contravening the equal protection guaranty which makes an act a crime when committed by one person, but not so when committed by another in like situation, or which makes punishable acts which were not so when committed, or which makes a question as to whether a certain act is criminal or not depend on an arbitrary or unreasonable distinction between persons or classes of persons committing it." *S. v. Fowler, supra.*

Applying these principles, we are of the opinion that the date line running through the statute has no reasonable relation to the purpose of the law, only serving to mechanically split into two groups persons in like situation with regard to the subject matter dealt with but in sharply contrasting positions as to the incidence and effect of the law; and that the attempted classification is not based upon a justifiable distinction.

However, the contention that the statute is offensive to the Constitution in that without due process of law it deprives the defendant, or may deprive it, or any other person of property rights is not well taken. No matter how long the practice of polluting the waters by waste products from mining or manufacturing has been practiced, there is no prescription against the State when it sees fit to remedy the evil.

As to the right of the defendant to raise this question of the constitutionality of the statute, it might be different if the defendant were attempting to pursue a remedy against other persons, but in this instance the State has invoked the law and the corporation is entitled to its defense. *S. v. Fowler, supra.*

In declaring a statute void by reason of its conflict with the Constitution, the Court is in the exercise of an extraordinary power and must observe the traditional restraints. But we are convinced the court below reached the right conclusion and its judgment is

Affirmed.

Ervin, J., took no part in the consideration or decision of this case.