RALPH D. CHADWICK AND OLIVE WILLIS v. HUGH SALTER, SHERIFF
OF CARTERET COUNTY, CARTERET COUNTY AND THOMAS WADE
BRUTON, ATTORNEY GENERAL OF NORTH CAROLINA.

(Filed 12 April, 1961.)

1. **Appeal and Error § 1:    Constitutional Law § 4:    Injunctions § 5—**
    A party may enjoin the enforcement of an unconstitutional statute
    when it clearly appears that either his fundamental property or personal
    rights are threatened, but a party may not attack the constitutionality
    of a statute by injunction when the action is not to protect any con-
    stitutional right directly and immediately threatened.

2. **Same—**
    This action was instituted to enjoin a sheriff from removing plain-
    tiffs' cattle from Shackleford Banks. *Held:* Plaintiffs are not entitled
    to challenege the constitutionality of Chapter 1057, S.L. 1957, since the
    1957 Act does not purport to authorize the destruction or removal of
    cattle from any portion of the Outer Banks but provides for enforce-
    ment of its provisions solely by criminal prosecution, and plaintiffs
    would be entitled to attack the constitutionality of that statute only as
    a defense to a criminal prosecution thereunder.

3. **Declaratory Judgment § 1—**
    An action may not be maintained under the Declaratory Judgment
    Act to determine rights, status or other relations unless the action in-
    volves a present actual controversy between the parties, G.S. 1-253.

4. **Statutes § 2:    Nuisance § 10:    Penalties—**
    The provisions of Chapter 782, S.L. 1959, confiscating cattle and other
    designated animals remaining upon the designated area of the Outer
    Banks after July 1, 1959, may not be upheld as providing for a penalty

or forfeiture since the seizure of animals designated in the statute is not predicated upon conviction or prosecution for violation of any law, and if the statute provides for confiscation to abate a public nuisance, it relates solely to a designated segment of the Outer Banks and is therefore void as a local act relating to the abatement of a public nuisance.

APPEAL by plaintiffs from judgment of *Bundy, Resident Judge,* entered in Chambers December 13, 1960. From CARTERET.

Plaintiffs allege they own certain cattle on Shackleford Banks; that defendant Salter, as Sheriff, pursuant to an order of the Board of Commissioners of Carteret County, is threatening to destroy or to remove plaintiffs' said cattle; that defendant Salter and Carteret County assert their threatened action is authorized by Chapter 1057, Session Laws of 1957, and Chapter 782, Session Laws of 1959; that said 1957 and 1959 statutes are unconstitutional; and that said defendants should be enjoined.

Plaintiffs, asserting their action is brought under the Declaratory Judgment Act, G.S. 1-253 *et. seq.,* "and for affirmative relief," served the Attorney General with a copy of the proceeding. G.S. 1-260.

Defendants Salter and Carteret County, hereinafter referred to as "defendants," filed a joint answer. Plaintiffs filed a reply to the further answer set forth therein. A separate answer was filed by the Attorney General.

The hearing was on the verified pleadings. The judgment recites that it was "agreed by counsel for all parties that no issues of fact were raised and that this hearing should be a final hearing . . ." The judgment recites further that the court gave careful and deliberate consideration to whether said 1957 and 1959 statutes "are valid and in the exercise of the police powers of the State, or whether they are void as contravening the due process (clauses) of the Constitutions of the State and Federal Governments." The judgment concludes as follows:

"The Court finds as relating to the cattle in question that the facts are substantially as set forth in the complaint of the plaintiffs, and that the allegations respecting jurisdiction are as therein laid.

"The Court also takes note of the fact that there is neither allegation nor proof of the insolvency of the defendants or any showing that the plaintiffs would not have adequate remedy at law should they suffer the loss of their cattle by unlawful or wrongful means. The Court also takes the position, and so holds as a matter of law, that the referred-to statutes attacked by

this proceeding are not in contravention of the Constitution of either the State or Federal Government, but are valid as in the exercise of the recognized police powers of the State of North Carolina.

"It is hereupon ORDERED that the Temporary Restraining Order heretofore issued in this cause be, and the same is hereby, dismissed, with costs taxed against the plaintiffs."

Plaintiffs excepted to said judgment and appealed.

*Charles W. Stevens and Harvey Hamilton, Jr., for plaintiffs, appellants.*

*Attorney General Bruton and Assistant Attorney General Rountree for the State.*

*Hamilton, Hamilton & Phillips for defendant Salter and defendant Carteret County, appellees.*

BOBBITT, J.    Admissions in the pleadings establish these facts: (1) Shackleford Banks (Carteret County) is between Beaufort Inlet and Barden's Inlet, being a portion of the Outer Banks between Beaufort Inlet and Ocracoke Inlet. (2) The land comprising Shackleford Banks is owned by private individuals. (3) Plaintiffs own and have approximately thirty head of cattle (cows, bulls and calves) on Shackleford Banks. (4) Defendants, by virtue of said 1957 and 1959 statutes, assert they have the right to destroy plaintiffs' said cattle or to remove them from Shackleford Banks.

The judgment is based upon a finding that the facts relating to plaintiffs' cattle "are substantially as set forth *in the complaint.*" (Our italics.) In addition to the facts stated above, *the complaint* alleges that plaintiffs have kept their cattle on Shackleford Banks over the years and do so now with the permission or acquiescence of the (private) owners of the land. No findings were made as to other factual matters alleged in defendants' further answer and in plaintiffs' reply thereto.

The allegations in defendants' further answer and in plaintiffs' reply thereto are in accord as to these facts: For many years, cattle have been permitted to run at large on the Outer Banks, including Shackleford Banks, and have been and are now dependent for their sustenance on whatever provision has been made by Mother Nature herself, "without any other or outside assistance."

Conflicting allegations, as to which the court made no findings of fact, are as follows:

1. Defendants allege: (a) The cattle, in search for provender,

"eat all green plant life that the beaches or banks land, where they roam, afford, or at least so much thereof as their stomachs will accommodate"; (b) they have no shelter or protection from harmful weather conditions, even in winter; (c) they are not treated for ticks and other insects abounding on the Outer Banks; (d) they are given no care whatsoever and at times, through neglect, are reduced to such state of want "as to make them literally walking skeletons"; and (e) they have no appreciable market value.

2. Plaintiffs' reply: (a) The cattle "remain almost altogether on the north or lagoon side of the banks and live and feed mainly and almost altogether in and on the open marshes." (b) The natural condition of the marshes and myrtle bushes on the Outer Banks provide sufficient protection against "most any weather conditions." (c) The cattle swim in the salt waters of the Sound and Creeks daily and "need no veterinarian treatment for ticks or other insects." (d) Mother Nature herself has amply and abundantly provided for the cattle, which are as healthy and fat "as those cattle which have been fed by the human hand." (e) ". . . when the cattle became grown and plump," plaintiffs, and other owners of such cattle, have removed them from time to time and sold them on the open market at a price substantially the same as that brought by cattle raised on the mainland, averaging at least $75.00 per cow. In addition, plaintiffs allege the damage to the Outer Banks has not been caused by the roaming of cattle thereon, a condition that has existed for over one hundred years, but that the serious damage to the Outer Banks has occurred "since the year 1954, with the advent of Hurricane Hazel."

Prior to the enactment of the 1957 Act now challenged by plaintiffs, the General Assembly of 1957 enacted (S.L. 1957, c. 995) "AN ACT TO PREVENT DAMAGE OR DESTRUCTION TO SAND DUNES ALONG THE OUTER BANKS OF NORTH CAROLINA." It declares unlawful and a misdemeanor, punishable as provided therein, "for any person . . . to damage, destroy, or remove any sand dune, or part thereof, lying along the outer banks of this State or to destroy or remove any trees, shrubbery, grass or other vegetation growing on said dunes unless such person . . . shall have first obtained a permit authorizing such proposed destruction or removal." It provides such permit may be granted by a municipal or county governing body if it "shall find as a fact that the particular damage, destruction or removal proposed will not materially weaken the dune as a means of protection from the effects of high wind and water, taking into consideration the height, width, and slope of the dune or dunes and the amount and type of vegetation thereon." The term "outer banks of this State" is defined as "all of that part of North Carolina which is

separated from the mainland by a body of water, such as an inlet or sound, and which is in part bounded by the Atlantic Ocean, and in New Hanover, Onslow and Brunswick Counties this shall include the land areas lying between the Inter-Coastal Waterway and the Atlantic Ocean."

This 1957 Act (S.L. 1957, c. 995), ratified June 4, 1957, and in force from and after July 1, 1957, is now codified as Chapter 104B, Article 3, G.S. Vol. 2C (Replacement 1958). Its purpose is set forth in the (quoted) preamble. Its provisions manifest a legislative determination that, unless a contrary factual determination is made in respect of specific areas as provided therein, it is necessary to prohibit the destruction or removal of trees, shrubbery, grass or other vegetation growing on the sand dunes along the Outer Banks in order to prevent further damage to this portion of the State's territory. Enforcement of its provisions is by criminal prosecution.

The said 1957 Act (S.L. 1957, c. 995) is not challenged by plaintiffs in this action. Defendants refer thereto only as declaratory of the State's public policy, namely, to take such action as may be appropriate and necessary to prevent further damage to the Outer Banks. Hereafter, we consider the two statutes directly challenged by plaintiffs and relied on by defendants.

The 1957 Act (S.L. 1957, c. 1057, now codified as G.S. Chapter 68, Article 4, 1959 Cumulative Supplement), challenged by plaintiffs, was ratified June 5, 1957, and is entitled "AN ACT TO PROHIBIT STOCK AND CATTLE FROM RUNNING AT LARGE ALONG THE OUTER BANKS." Section 1 provides: "From and after July 1, 1958, it shall be unlawful for any person, firm or corporation to allow his or its horses, cattle, goats, sheep, or hogs to run free or at large along the outer banks of this State. This Act shall not apply to horses known as marsh ponies or banks ponies on Ocracoke Island, Hyde County. This Act shall not apply to horses known as marsh ponies or banks ponies on Shackelford (sic) Banks between Beaufort Inlet and Barden's Inlet in Carteret County. Saving and excepting those animals known as 'banker ponies' on the Island of Ocracoke owned by the Boy Scouts and not exceeding 35 in number." Section 1½ provides: "Notwithstanding any other provisions of this Act, the Director of the Department of Conservation and Development shall have authority to remove or cause to be removed from Ocracoke Island and Shackelford (sic) Banks all ponies known as banks ponies or marsh ponies if and when he determines that such action is essential to prevent damage to the island. In the event such a determination is made, the director, in lieu of removing all ponies, may require that they be restricted to a certain area or corralled so as to

prevent damage to the island. In the event such action is taken, the director is authorized to take such steps and act through his duly designated employees or such other persons as, in his opinion, he deems necessary and he may accept any assistance provided by or through the National Park Service." Section 2 declares the violation of this statute a misdemeanor, punishable as provided therein. Section 3 declares the provisions of "G.S. 68-24 to G.S. 68-30," relative to the impounding of stock running at large, shall apply with equal force and effect along the Outer Banks of this State. Section 4 defines the term "outer banks of this State" as "all of that part of North Carolina which is separated from the mainland by a body of water, such as an inlet or sound, and which is in part bounded by the Atlantic Ocean."

The 1957 Act (S.L. 1957, c. 1057), challenged by plaintiffs, contains no provision for its enforcement in respect of cattle otherwise than by criminal prosecution. Nothing therein purports to authorize either the destruction or removal of cattle allowed to run free and at large in violation of its provisions.

Plaintiffs attack the challenged 1957 Act on the ground the provisions thereof relating to "marsh ponies or banks ponies on Ocracoke Island, Hyde County," and to "marsh ponies or banks ponies on Shackelford *(sic)* Banks," constitute an unreasonable and arbitrary classification, citing *S. v. Glidden Co.*, 228 N.C. 664, 46 S.E. 2d 860. There are no allegations or findings relevant to whether there is a reasonable factual basis for placing "marsh ponies or banks ponies" in a classification different from cattle. Suffice to say, plaintiffs, if prosecuted for violation of the challenged 1957 Act, may, as in *S. v. Glidden Co., supra,* assert fully their contentions as to its unconstitutionality.

Ordinarily, the constitutionality of a statute or municipal ordinance will not be determined in an action to enjoin its enforcement. *Jarrell v. Snow*, 225 N.C. 430, 35 S.E. 2d 273, and cases cited; *Suddreth v. Charlotte*, 223 N.C. 630, 27 S.E. 2d 650, and cases cited. The well established exception to this rule is stated by *Higgins, J.,* as follows: "An Act will be declared unconstitutional and its enforcement will be enjoined when it clearly appears either that property or fundamental human rights are denied in violation of constitutional guarantees." *Roller v. Allen*, 245 N.C. 516, 518, 96 S.E. 2d 851, and cases cited. It is noteworthy that plaintiffs do not allege *they* own any land on Shackleford Banks. The gist of their allegations is that they own cattle which, without interference by the owners of the land, run at large on Shackleford Banks.

As to plaintiffs' attack on the challenged 1957 Act, we are of opinion that the general rule stated in the preceding paragraph applies to the present factual situation. It is noted that an action is maintainable under the Declaratory Judgment Act, G.S. 1-253 *et seq.*, "only in so far as" it "affects the civil 'rights, status and other relations' in the present actual controversy between parties." *Calcutt v. McGeachy*, 213 N.C. 1, 195 S.E. 49.

The 1959 Act (S.L. 1959, c. 782) challenged by plaintiffs is entitled "AN ACT TO PROVIDE FOR THE REMOVAL OF CATTLE REMAINING ON CORE BANKS IN CARTERET COUNTY." Its provisions, quoted in full, are as follows:

"WHEREAS, under the provisions of Chapter 1057 of the Session Laws of 1957, it is unlawful to permit cattle, sheep, goats, or swine to run at large on the Outer Banks of this State from and after July 1, 1958; and

"WHEREAS, there are numbers of such livestock remaining on the Outer Banks in Carteret County; and

"WHEREAS, it is necessary to provide for the removal of such cattle: Now, therefore,

*"The General Assembly of North Carolina do enact:*

"Section 1. All cattle, sheep, goats and swine remaining on the Outer Bank, between Beaufort Inlet and Ocracoke Inlet in Carteret County on or after July 1, 1959, shall become the property of Carteret County and the sheriff of said county is authorized and directed to remove said cattle, sheep, goats and swine from said Banks by whatever method he may deem necessary and turn the same over to such charitable or educational institutions in Carteret County as may be designated by the Board of County Commissioners of said county.

"Sec. 2. All laws and clauses of laws in conflict with this Act are hereby repealed.

"Sec. 3. This Act shall be in full force and effect from and after its ratification.

"In the General Assembly read three times and ratified, this the 9th day of June, 1959."

While the preamble refers to the challenged 1957 Act, the effective provisions of the 1959 Act are complete within themselves. They relate to *a portion* of the Outer Banks, namely, the segment thereof in Carteret County between Beaufort Inlet and Ocracoke Inlet. They relate to *all* cattle, etc., *remaining* on said segment on and after July

1, 1959. They make no distinction between cattle running at large and cattle that are confined and for which provision is made as to their food and shelter otherwise than by Mother Nature.

No provision of the 1959 Act purports to authorize the Sheriff of Carteret County, with or without purported authority from the Board of Commissioners of Carteret County, to destroy plaintiffs' cattle.

The 1959 Act purports, by legislative fiat, to divest plaintiffs' title to the cattle and to vest title in Carteret County, and to authorize the Sheriff of Carteret County to remove the cattle from Shackleford Banks "by whatever method he may deem necessary and turn the same over to such charitable or educational institutions in Carteret County as may be designated by the Board of Commissioners of said county." In short, the 1959 Act confiscates plaintiffs' cattle and authorizes disposition thereof by gift to a charitable or educational institution in Carteret County.

True, as stressed by plaintiffs, the 1959 Act makes no provision for the payment of compensation to plaintiffs. Where private property is appropriated for a public purpose or use in the exercise of the power of eminent domain, and the statute authorizing such appropriation provides no adequate remedy for compensation, the owner, in the exercise of his constitutional rights, may maintain an action to obtain just compensation therefor. *Sale v. Highway Commission,* 242 N.C. 612, 89 S.E. 2d 290; *Eller v. Board of Education,* 242 N.C. 584, 89 S.E. 2d 144. However, defendants are not asserting any rights, in the exercise of the power of eminent domain, to appropriate plaintiffs' cattle for a public purpose or use.

Defendants contend that personal property, although harmless *per se,* may become *a public nuisance* when used in violation of the criminal laws of the State, and that in such case the General Assembly may provide for the forfeiture of personal property so used. Defendants rely largely on *Daniels v. Homer,* 139 N.C. 219, 51 S.E. 992; *Lawton v. Steele,* 152 U.S. 133, 38 L. Ed. 385, 14 S. Ct. 499; and similar cases.

It is noted that G.S. 18-6, relating to vehicles used in the unlawful transportation of intoxicating liquor, provides for the forfeiture (confiscation) and sale of such vehicles only upon conviction of the criminal offense. In this connection, see *Skinner v. Thomas,* 171 N.C. 98, 87 S.E. 976.

Nothing appears herein to indicate plaintiffs have been prosecuted and convicted of violating the challenged 1957 Act. Nor do plaintiffs admit they have violated any valid criminal statute. Compare *Daniels v. Homer, supra.* The 1959 Act provides no procedure for a judicial determination as to whether plaintiffs' cattle constitute a public

nuisance in violation of the challenged 1957 Act or other penal statute. True, it was held in *Daniels v. Homer, supra,* where the use of fish nets in defined waters was banned from January 15th to May 15th, that the owner of the fish nets, upon the seizure thereof for alleged unlawful use, had an adequate remedy at law by claim and delivery or for recovery of the value thereof. (Note: In *Daniels v. Homer, supra,* two of the five members of the Court dissented. See dissenting opinions of *Connor, J. and Walker, J.*) The majority opinion emphasizes the fact that, if seizure were forbidden pending a judicial determination, either in a criminal prosecution or otherwise, as to whether such seizure was lawful, the "close" season would pass and the objective of the statute would be nullified.

The 1959 Act goes far beyond the challenged 1957 Act. Moreover, the authority purportedly conferred thereby is not conditioned on the violation, much less the establishment of such violation after hearing, of the challenged 1957 Act.

There are many facets to the legal problems suggested in the preceding paragraphs. 12 Am. Jur., Constitutional Law §§ 676-679; 16A C.J.S., Constitutional Law § 645. This statement appears in 23 Am. Jur., Forfeitures and Penalties § 5: "Statutes imposing forfeitures by way of punishment are subject to the general rules governing the interpretation and construction of penal statutes. Hence, statutes authorizing the forfeiting of property ordinarily used for a legal purpose are to be strictly construed, since they are very drastic in their operation." See 37 C.J.S., Forfeitures § 5. In *Daniels v. Homer, supra, Hoke, J.* (later *C.J.*), in his *concurring* opinion, referring to legislation creating a criminal nuisance and directing its summary abatement, says: "When such legislation, however, involves the destruction of private property, it must be limited to the reasonable necessities of the case which calls it forth, and may under given circumstances become the subject of judicial scrutiny and control."

Upon the present record, we deem it inappropriate to pass upon whether, if the 1959 Act were considered applicable only to cattle allowed to run at large in violation of the challenged 1957 Act, the forfeiture and confiscation might be upheld upon legal principles underlying the decision in *Daniels v. Homer, supra,* and similar cases. Apart from the fact it is unnecessary to decision, the minimum factual findings and the less than exhaustive exploration of this subject in the briefs suggest it would be better to deal with this question upon another record.

The sole ground on which a forfeiture and confiscation of plaintiffs' cattle could be sustained is that they are running at large in violation of the challenged 1957 Act and therefore constitute a public nuisance.

The challenged 1957 Act does not provide for such forfeiture and confiscation. As stated above, the 1959 Act relates solely to the segment of the Outer Banks in Carteret County between Beaufort Inlet and Ocracoke Inlet. It purports to authorize and *direct* the Sheriff of Carteret County, without judicial inquiry of any kind, to remove and dispose of *all* cattle, *etc.*, in this particular area. In the light most favorable to defendants, it is a local act relating to the abatement of a public nuisance. If so, it is unconstitutional and therefore void as violative of Article II, Section 29, Constitution of North Carolina.

The conclusions reached are these: No opinion is expressed herein as to the constitutionality of the challenged 1957 Act. The 1959 Act, being unconstitutional and void, confers no authority on defendants to destroy or remove plaintiffs' cattle. Plaintiffs are entitled to a judgment enjoining defendants from such acts. For error in failing to enter such order and in entering judgment dismissing plaintiffs' action, the judgment is vacated and the cause is remanded for judgment in accordance with the law as stated herein.

Error and remanded.