STATE OF NORTH CAROLINA EX REL. RUFUS L. EDMISTEN, ATTORNEY GEN-
ERAL v. THE HONORABLE ELTON G. TUCKER, DISTRICT COURT JUDGE FOR
THE FIFTH JUDICIAL DISTRICT; THE HONORABLE PHILIP O. REDWINE, DIS-
TRICT COURT JUDGE FOR THE TENTH JUDICIAL DISTRICT; THE HONORABLE
GEORGE R. GREENE, DISTRICT COURT JUDGE FOR THE TENTH JUDICIAL DIS-
TRICT; THE HONORABLE NARLEY L. CASHWELL, DISTRICT COURT JUDGE
FOR THE TENTH JUDICIAL DISTRICT; THE HONORABLE DAVID Q. LABARRE,
DISTRICT COURT JUDGE FOR THE FOURTEENTH JUDICIAL DISTRICT; THE
HONORABLE L. STANLEY BROWN, DISTRICT COURT JUDGE FOR THE TWEN-
TY-SIXTH JUDICIAL DISTRICT; THE HONORABLE LEWIS BULWINKLE, DIS-
TRICT COURT JUDGE FOR THE TWENTY-SEVENTH JUDICIAL DISTRICT; ANTHONY
WAYNE ROSE, DEFENDANT, WAKE COUNTY DISTRICT COURT; MAXIE
THOMAS COKER, JR., DEFENDANT, WAKE COUNTY DISTRICT COURT; DAVID
ADCOCK POWELL, DEFENDANT, WAKE COUNTY DISTRICT COURT; GARY RAY-
MOND HENRY, DEFENDANT, WAKE COUNTY DISTRICT COURT; WILLIE A.
JOHNSON, DEFENDANT, WAKE COUNTY DISTRICT COURT; PATRICK LEWIS
HOWARD, DEFENDANT, WAKE COUNTY DISTRICT COURT; STEPHEN J. HART-
WIG, DEFENDANT, WAKE COUNTY DISTRICT COURT; DANNY LIN TEW, DE-
FENDANT, WAKE COUNTY DISTRICT COURT; EUGENE PERRY WATKINS, JR.,
DEFENDANT, WAKE COUNTY DISTRICT COURT; JOHN TIMOTHY DAVES, DE-
FENDANT, WAKE COUNTY DISTRICT COURT; LINWOOD EARL MASSEY, DE-
FENDANT, WAKE COUNTY DISTRICT COURT; ERNEST BRADLEY WILLIAMS,
DEFENDANT, DAVIE COUNTY DISTRICT COURT; EILEEN M. SMITH, DEFENDANT,
MECKLENBURG COUNTY DISTRICT COURT; LAWRENCE WILSON CROW,
DEFENDANT, MECKLENBURG COUNTY DISTRICT COURT; JOHN BERNARD
HOWREN, JR., DEFENDANT, GASTON COUNTY DISTRICT COURT

No. 453PA84

(Filed 4 December 1984)

1. Declaratory Judgment Act § 4.1— constitutionality of statute—necessity for
   actual controversy

   While a determination of the constitutionality of a statute may be a prop-
   er subject for declaratory judgment, jurisdiction under the Declaratory Judg-
   ment Act may be invoked only in a case in which there is an actual or real
   existing controversy between parties having adverse interests in the matter in
   dispute.

2. Declaratory Judgment Act § 3— alleging existence of actual controversy

   A complaint brought pursuant to the Declaratory Judgment Act must set
   forth all of the facts necessary to disclose the existence of an actual or real ex-
   isting controversy between the parties to the action. If it fails to do this, the
   court is without jurisdiction, and the complaint must be dismissed.

3. Declaratory Judgment Act § 4.1— validity and construction of Safe Roads Act
   —district court judges as defendants—no actual or real existing controversy

   District court judges who ruled adversely to the State on the constitu-
   tionality and construction of the Safe Roads Act of 1983 in deciding cases in

their official capacities may not be considered as litigants antagonistic to either the Attorney General or the people of North Carolina in regard to the validity and construction of the Act. Therefore, the trial court properly dismissed the Attorney General's declaratory judgment action against such judges to determine the correctness of their rulings for failure of the complaint to disclose an actual or real existing controversy between the parties. G.S. 1-260; G.S. 11-11; G.S. 114-2(8)(2).

**4. Declaratory Judgment Act § 4.1— validity and construction of Safe Roads Act —individual defendants—no actual or real existing controversy**

Although adversity of interest as to the validity and construction of the Safe Roads Act was properly alleged in a declaratory judgment action brought by the State against individual defendants in whose cases questioned rulings concerning the Act had been made in the district court, the superior court had no jurisdiction of such action because no actual or real existing controversy between the individual defendants and the State could be premised upon pending cases or cases in which judgments had been entered by courts of competent jurisdiction.

**5. Mandamus § 3.1; Prohibition, Writ of § 1— writ to district court judge—no authority by superior court judge**

A judge of the superior court has no authority or jurisdiction to issue a writ of mandamus or prohibition to a district court judge.

**6. Appeal and Error § 5— validity of Safe Roads Act—rulings in district court— declaratory judgment action—supervisory jurisdiction of Supreme Court**

The Supreme Court will not exercise its supervisory power under Art. IV, § 12 of the N. C. Constitution to determine the merits of claims set forth in the State's complaint seeking a declaratory judgment concerning rulings on the constitutionality and construction of the Safe Roads Act in cases in the district court; rather, the questions will have to await decision by the orderly process of judgment and appeal in the individual cases.

APPEAL by the State from the order of *Barnette, J.,* entered at the 28 June 1984 Civil Session of Superior Court, WAKE County, dismissing the State's complaint and petition against all defendants. We granted the State's petition for discretionary review prior to determination by the Court of Appeals pursuant to N.C.G.S. § 7A-31 on 20 August 1984.

This is a civil action instituted by the Attorney General on behalf of the State of North Carolina seeking a declaratory judgment as to the constitutionality of nine (9) provisions of the Safe Roads Act of 1983 (Chapter 435 of the 1983 Session Laws, effective 1 October 1983, as amended by Chapter 1101 of the 1983 Session Laws, Regular Session 1984), and an authoritative declaration as to the proper construction and application of five (5) other pro-

visions of the Act. The State named as defendants in this action seven (7) district court judges (hereinafter "the judicial defendants") who had ruled adversely to the State in various driving while impaired ("DWI") cases, and fifteen (15) individuals in whose district court cases the judicial defendants had made such rulings. The complaint and amended complaint requested that the superior court "construe and interpret" the Safe Roads Act in the manner requested by the State and "declare" the challenged provisions to be constitutional.

As an alternative to the complaint, and in the event that the trial court found no jurisdiction pursuant to the Declaratory Judgment Act, N.C.G.S. § 1-253 *et seq.*, the State requested that the court treat the complaint as a petition for a writ of mandamus or prohibition, requesting that the superior court order the judicial defendants to cease their allegedly erroneous constitutional interpretations of the challenged sections of the Safe Roads Act.

Each of the defendants moved pursuant to Rule 12(b) of the North Carolina Rules of Civil Procedure that the complaint be dismissed for want of subject matter jurisdiction and that the petition be denied. After receiving briefs from the parties and hearing oral arguments, the trial court ruled on the defendants' Rule 12(b) motions. Without reaching the substantive questions presented, Judge Barnette dismissed the State's complaint as to all defendants on the ground that the superior court was without subject matter jurisdiction to entertain the action pursuant to the Declaratory Judgment Act. Judge Barnette further ruled that the superior court is without authority to issue writs of mandamus or prohibition to judges of the district court, reasoning that such authority rests exclusively with the appellate division.

The State does not appeal the dismissal of its action as to District Court Judges Elton G. Tucker, David Q. LaBarre, and L. Stanley Brown, nor as to individual defendants Eileen M. Smith, John Timothy Daves and Ernest Bradley Williams.

*Rufus L. Edmisten, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and David Roy Blackwell and W. Dale Talbert, Assistant Attorneys General, for the State.*

*Tharrington, Smith & Hargrove, by Wade M. Smith, Roger W. Smith, and Douglas E. Kingsberry for defendant-Judges*

*Philip O. Redwine, George R. Greene, Narley L. Cashwell and Lewis Bulwinkle.*

*Harris, Bumgardner & Carpenter, by James R. Carpenter and R. Dennis Lorance, for defendant John Bernard Howren, Jr.*

*Lucas, Brown & Lock, by Thomas H. Lock, for defendant Anthony Wayne Rose.*

*Van Camp, Gill & Crumpler, by William B. Crumpler, for defendants Stephen J. Hartwig, Willie A. Johnson, Dannie Lin Tew, and Gary Raymond Henry.*

*Hafer, Hall & Schiller, by Kyle S. Hall, for defendant David Adcock Powell.*

*Merriman, Nicholls, Crampton, Dombalis & Aldridge, P.A., by Nicholas J. Dombalis, II, for defendant Maxie Thomas Coker.\**

*\*We have not listed as counsel appearing in this appeal those attorneys representing individual named defendants who did not either file briefs on their own behalf, or adopt the arguments presented by those who did.*

MEYER, Justice.

This unprecedented civil action poses many novel and interesting questions concerning the operation of the Declaratory Judgment Act, G.S. § 1-253 *et seq.* and the process of constitutional adjudication. The narrow legal issues presented by the State's appeal concern whether the complaint alleged a controversy justiciable under the Declaratory Judgment Act and whether the trial court was without jurisdiction to issue the writs of mandamus or prohibition to the judicial defendants.[1] We hold that the State's complaint was properly dismissed and the petition properly denied. A brief summary of the events leading up to this

---

1. On 23 August 1984, we entered an amended order limiting our consideration in this appeal to the question of the superior court's jurisdiction to enter a declaratory judgment on the substantive issues presented. However, the question of that court's jurisdiction to issue the writs of mandamus or prohibition were also fully briefed and orally argued by the parties. In view of the fact that the question has been squarely presented to the Court at this time, we will exercise our supervisory power under Rule 2 of the Rules of Appellate Procedure and review the question of the court's jurisdiction to enter the writs of mandamus or prohibition.

appeal will precede the examination of the jurisdictional and jurisprudential issues raised.

I.

The present action arose out of the Attorney General's attempt to secure an expedited and conclusive judicial determination of the constitutionality of the Safe Roads Act of 1983. The Act represents a comprehensive and unified approach to the problem of the drunken driver on North Carolina roadways. Its provisions fundamentally altered the substantive and procedural law concerning drunken driving, including the elements of the criminal offense; pre and post-arrest chemical and psycho-motor testing; trial and sentencing procedures, including evidentiary rules; and civil as well as criminal penalties. In short, the Act altered long standing trial practices in the district and superior courts.

The Safe Roads Act carried an effective date of 1 October 1983. Since that time, various defendants across the state have raised numerous questions concerning the Act's application and the constitutional validity of many of its provisions. These challenges initially arose in the district courts as a part of the criminal prosecutions for "driving while impaired" or in review proceedings following civil license revocations. As is customary, individual district court judges ruled upon the legal issues raised by individual defendants on a case-by-case basis. Case-by-case adjudication of challenges to the Safe Roads Act brought the not surprising result of conflicting judicial interpretation of the Act's various provisions. Particular judges found portions of the Act constitutionally infirm, whereas other judges upheld the identical provisions as constitutionally sound. While these cases made their way through the various stages of appeal to the superior court for trial *de novo* and then for further appellate review, the district courts in several of the state's most congested districts built huge backlogs of unadjudicated "driving while impaired" cases. In addition, the conflicting interpretations of the Act's validity from district to district led to different treatment for defendants charged with identical offenses under the Act.

Concern on the part of the Attorney General about the prospect of a long period of uneven enforcement of the Act's provisions while the various individual cases progressed through the superior and appellate courts prompted a comprehensive review

of the issues raised in the Safe Roads Act challenges. Based upon this review, the Attorney General chose to consolidate the various individual challenges to, and judicial rulings on, the main driving while impaired provisions of the Safe Roads Act and to present them for expedited judicial resolution in a single civil lawsuit.

Citing a massive backlog of pending driving while impaired cases in the district courts, limited statutory authority on the part of the State to appeal from adverse rulings in the district courts, and the lengthy, time-consuming process that would normally be afforded the State for resolution of these issues on a case by case basis in the appellate division, the Attorney General, on behalf of the State of North Carolina, filed this declaratory judgment action and, in the alternative, petition for writ of mandamus or prohibition. The action requested a declaratory judgment as to those issues repeatedly raised concerning the constitutionality and application of the Safe Roads Act.[2] Named as party defendant-respondents were those judges who had declared portions of the Act unconstitutional or construed its provisions in a manner adverse to the State. The complaint further named as defendants those individual defendants in whose cases the district court judges had so ruled.

Jurisdiction as to the individual and judicial defendants is alleged in the following manner:

### III GENERAL ALLEGATIONS

C. The judicial defendants named herein have all at one time or another ruled certain provisions of the Safe Roads Act to be unconstitutional or otherwise have construed the statute contrary to the intent of the General Assembly. Likewise, the individual defendants named herein have raised constitutional challenges to the Safe Roads Act at one point

---

2. In its complaint, the State specifically alleged jurisdiction over the action pursuant to the Declaratory Judgment Act, N.C.G.S. § 1-253 *et seq.*; Rules 57 and 65 of the North Carolina Rules of Civil Procedure; Rule 22 of the North Carolina Rules of Appellate Procedure; Rule 19 of the General Rules of Practice for the Superior and District Courts; and Article IV of the North Carolina Constitution. In addition, the State alleged jurisdiction "pursuant to the common law and the inherent authority of the judicial department to interpret and construe statutes and declare the legal rights and obligations of parties pursuant thereto."

or another or have alleged certain provisions of the Safe Roads Act denied them constitutional rights. They have at one point or another sought to declare the statute unconstitutional or in the alternative to have the charges against them dismissed.

D. All the defendants, by rulings or motions, have taken a position adverse to that of the State. There is a real, substantial and actual controversary [sic] between the parties.

E. The issues raised by the allegations herein are continually raised in the superior and district court divisions of the General Court of Justice. Upon information and belief, the State alleges that these issues will continue to arise and will impede the orderly and efficient administration of justice absent a prompt and definitive ruling.

F. The defendants and judges named herein all have an interest in the resolution of these questions.

G. The State of North Carolina has an interest in swift and orderly administration of justice and in the uniform application of the law throughout the State. The State has a compelling interest and a constitutionally mandated duty to enforce the criminal laws of the State that are designed to protect citizens of the State from the operation of vehicles by persons impaired by an impairing substance. The resolution of these questions is necessary for the State to fulfill its obligations.

The complaint contains a section of "SPECIFIC ALLEGATIONS" which details the various challenges to the Safe Roads Act and judicial rulings entered thereon in the individual cases in the district and superior courts. The statutory provisions, criminal defendant (or civil plaintiff), presiding judge and judicial ruling in the cases[3] alleged in this section of the complaint may be summarized as follows:

1. *N.C.G.S.* § *15A-534.2. Detention of impaired drivers.* (Persons who are arrested for DWI, who are intoxicated, and pose a danger to themselves may be held for up to 24 hours.)

---

3. Unless otherwise noted, all of the cases decided in the lower courts are currently pending for review in either the superior or the appellate courts.

State ex rel. Edmisten v. Tucker

*Held*: Unconstitutional as it affects the defendant's right of access to counsel.

*Cases*: A. *State v. Willie A. Johnson*, (Wake County, 84CR5312). B. *State v. Stephen J. Hartwig*, (Wake County, 83CR83444). C. *State v. Dannie Lin Tew*, (Wake County, 84CR15166).

*Judge: Narley L. Cashwell.*

2. *N.C.G.S. § 20-16.2(a)(6). Implied consent to chemical analysis; mandatory revocation of license in event of refusal; right of driver to request analysis.* (Thirty-minute time limit in which to call an attorney or witness prior to chemical testing procedure.)

*Held*: Unconstitutional as it fails to afford the defendant effective assistance of counsel, and denies the defendant his right of access to counsel.

*Case: State v. John Bernard Howren, Jr.*, (Gaston County, 83CR23635).

*Judge: Lewis Bulwinkle.*

3. *N.C.G.S. § 20-16.5. Immediate civil license revocation for certain persons charged with implied-consent offenses.* (Immediate ten-day pretrial license revocation authorized when an individual charged with DWI has an alcohol concentration of 0.10 or more or where he refuses to submit to chemical analysis.)

*Held*: Constitutional in three revocation proceedings. Statutory revocation provision then challenged by either direct appeal and/or filing of separate civil action by affected defendants.

*Defendants*: A. Ernest Bradley Williams, (Davie County, 83CVR4048 and 83CVS295). (Challenge subsequently withdrawn by defendant.) B. Gary Raymond Henry, (Wake County, 83CVRS88527 and 84CVS2347). C. Lawrence Wilson Crow, (Mecklenburg County, 83CVR67347) and (*Crow v. State of North Carolina*, C-C-83-0809-P) (W.D.N.C.).

4. *N.C.G.S. § 20-138.1(a). Impaired driving.* Proof of offense either under a theory of impairment as found in subsec-

tion (a)(1), driving "while under the influence of an impairing substance," or the theory of the 0.10 per se offense as found in subsection (a)(2), driving "after having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more."

*Held*: Election of theory must be made at time of charging and charge must inform defendant of State's election; charge which fails to so inform the defendant is unconstitutional.

*Cases*: A. *State v. Maxie Thomas Coker, Jr.*, (Wake County, 83CR77756). B. *State v. David Adcock Powell*, (Wake County, 83CR75410).

*Judge: George R. Greene.*

5. *N.C.G.S. § 20-138.1(a)(2). Impaired Driving.* The 0.10 per se offense.

*Held*: Unconstitutionally vague insofar as phrase "relevant time after the driving" failed to establish sufficiently clear standard of conduct.

*Case: State v. Anthony Wayne Rose,* (Wake County, 83CR69293).

6. *N.C.G.S. § 20-138.1(c). Pleading.* (Statutory short form charge; pleading sufficient if it states time and place of alleged offense and charges driving "while subject to an impairing substance.")

*Held*: Unconstitutionally vague in seven different respects.

*Cases: State v. Maxie Thomas Coker, Jr.,* (Wake County, 83CR77756); *State v. David Adcock Powell,* (Wake County, 83CR75410).

*Judge: George R. Greene.*

7. *N.C.G.S. § 20-139.1(b2). Breath Analysis Results Inadmissible if Preventive Maintenance Not Performed.* (Results obtained from a breath testing instrument are admissible into evidence; however, if the defendant objects and shows

that preventive maintenance has not been performed on the instrument, the results are inadmissible.)

*Held*: Unconstitutional shifting of burden of proof to the defendant on the issue of preventive maintenance.

*Case: State v. John Bernard Howren*, (Gaston County, 83CR23635).

*Judge: Lewis Bulwinkle.*

8. *N.C.G.S. § 20-139.1(b3). Sequential Breath Test Required*. (As of 1 January 1985 an individual charged with driving while impaired must have two chemical analyses of the breath performed; currently only one chemical analysis is performed.)

*Held*: Constitutional as it regards a defendant charged with DWI prior to 1 January 1985.

*Judge: Lewis Bulwinkle.*

*Defendant*: John Bernard Howren, Jr. (*State v. John Bernard Howren*, Gaston County, 83CR23635.)

9. *N.C.G.S. § 20-139.1(e1). Use of Chemical Analyst's Affidavit in District Court*. (Sworn affidavit of chemical analyst is admissible into evidence without further authentication in any hearing or trial in a district court with respect to certain facts.)

*Held*: Unconstitutional as it violates the defendant's right of confrontation.

*Cases*: A. *State v. Eugene Perry Watkins, Jr.*, (Wake County, 83CRS8057). *Judge Philip O. Redwine*. B. *State v. Diana Sapp*, (Durham County, 83CR30792). *Judge David Q. LeBarre*. (Affidavit ruled inadmissible and defendant found not guilty. Case closed.) C. *State v. Ernest Harlan McKeithan*, (New Hanover County, 83CR21345). *Judge Elton G. Tucker*. D. [NO CASE ALLEGED] *Judge L. Stanley Brown.*

*Held*: Constitutional.

*Defendant*: Eilene M. Smith (*State v. Eileen M. Smith*, Mecklenburg County, 83CR75181).

10. *N.C.G.S. § 20-139.1. Procedures governing chemical analyses; admissibility; evidentiary provisions; and controlled drinking programs.*

*Held*: The intoxilizer, Model 40011AS, as used in Wake County, did not perform a chemical analysis by the use of infrared light and, therefore, its testing results are not admissible under the provisions of N.C.G.S. 20-139.1.

*Case*: *State v. John Timothy Daves* (Wake County, 83CRS072471).

*Judge: George R. Greene.*

*Defendant*: Gary Raymond Henry (*State v. Gary Raymond Henry*, Wake County, 83CVRS88527 and 84CVS2347) also raised this issue.

11. *N.C.G.S. Chapter 20.*

*Defendant*: Patrick Lewis Howard (*State v. Patrick Lewis Howard*, Wake County, 83CR76220) challenged the charge which appears on the uniform traffic citation which uses the term "operate" as opposed to the statutory term "drive."

12. *N.C.G.S. § 20-138.1(a). The offense of impaired driving.*

*Defendant*: Patrick Lewis Howard (*State v. Patrick Lewis Howard*, Wake County, 83CR76220). Dismissal of charges sought on ground that the conduct described is not stated to be a criminal offense.

13. *N.C.G.S. § 20-138.1(a)(2). Impaired Driving.* The 0.10 per se offense. The complaint alleges the following with regard to rulings under N.C.G.S. 20-138.1(a)(2) which address the sufficiency of the State's evidence:

"Upon information and belief, Judges Cashwell, Redwine, and Greene have ruled that when the alcohol concentration of a defendant is .10, as shown by the intoxilizer, the State has failed to discharge its burden to prove the element of an alcohol concentration of .10 or more as required by N.C.G.S. 20-138.1(a)(2). The basis of this ruling is that the intoxilizer

manufacturer's specifications state that the instrument is accurate within plus or minus .01."

*Judges: Narley Cashwell; Philip O. Redwine; George R. Greene.*

14. *N.C.G.S. § 20-179. Sentencing hearing after conviction for impaired driving; determination of grossly aggravating and aggravating and mitigating factors; punishments.* (One of the statutory grossly aggravating factors is a previous conviction for an offense involving impaired driving within seven years of the date of the offense for which the defendant is being sentenced.)

*Held*: Unconstitutional insofar as statute permitted the use of convictions occurring prior to 1 October 1983 to enhance the defendant's punishment under N.C.G.S. 20-179.

*Case: State v. Linwood Earl Massey*, (Wake County, 84CR2734).

*Judge: George R. Greene.*

In its prayer for relief, the State requests that the superior court "construe and interpret the Safe Roads Act of 1983 as constitutional and resolve the issues raised herein." In conclusion, the State added that no injunctive relief was sought "or any order requiring any person named herein to follow the law as declared. It is the opinion of the State that the district court judges named herein will follow the law as this court declares without the necessity of any order."

The State, in its oral argument before this Court, has characterized the issue presented for review as a simple question of whether the State can bring an action to declare "what the law is" and have it ultimately brought to this Court for review. The short answer to the question thus posed is, no; neither the Declaratory Judgment Act nor the writs of mandamus and prohibition permit the State to obtain the relief it seeks under the facts alleged in its complaint.

II.

The Declaratory Judgment Act provides that "[a]ny person . . . whose rights, status or other legal relations are affected by a

statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." N.C.G.S. § 1-254. Pursuant to N.C.G.S. § 1-253, the courts of record "shall have power to declare rights, status, and other legal relations, whether or not further relief could be claimed." "The purpose of the Declaratory Judgment Act is to settle and afford relief from uncertainty concerning rights, status and other legal relations, and although the Act is to be liberally construed, its provisions are not without limitation." *Consumers Power v. Power Co.*, 285 N.C. 434, 446, 206 S.E. 2d 178, 186 (1974). "[T]he apparent broad terms of the statute do not confer upon the court unlimited jurisdiction of a merely advisory nature to construe and declare the law." *Tryon v. Power Co.*, 222 N.C. 200, 203, 22 S.E. 2d 450, 452 (1942).

[1] Thus, while a determination of the constitutionality of a statute may be a proper subject for declaratory judgment, jurisdiction under the Declaratory Judgment Act may be invoked only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute. *Greensboro v. Wall*, 247 N.C. 516, 101 S.E. 2d 413 (1958); *Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404 (1949). The existence of such genuine controversy between parties having conflicting interests is a jurisdictional necessity. *Id.; Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404; *Tryon v. Power Co.*, 222 N.C. 200, 22 S.E. 2d 450.

An "actual or real and existing controversy" has been defined as a controversy between parties having *adverse interests* in the matter in dispute.

> An actual controversy between the parties is a jurisdictional prerequisite for a proceeding under the Declaratory Judgment Act in order to "preserve inviolate the ancient and sound juridic concept that the inherent function of judicial tribunals is to adjudicate genuine controversies between antagonistic litigants with respect to their rights, status or other legal relations."

*Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 703, 249 S.E. 2d 402, 414 (1978), *quoting Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404. Accordingly, it is essential that the con-

troversy be "between *antagonistic litigants* with respect to *their rights,* status or other legal relations."

[2]  It is mandatory that a complaint brought pursuant to the Declaratory Judgment Act set forth all of the facts necessary to disclose the existence of an actual or real existing controversy between the parties to the action. *Lide v. Mears,* 231 N.C. 111, 56 S.E. 2d 404. If it fails to do this, the court is without jurisdiction, and the complaint must be dismissed. *Id.; Tryon v. Power Company,* 222 N.C. 200, 22 S.E. 2d 450; *Light Company v. Iseley,* 203 N.C. 811, 167 S.E. 56 (1933).

The Attorney General's complaint alleges that the parties to this action do have adverse interests with respect to the Safe Roads Act. The complaint alleges that the State has a "compelling interest and a constitutionally mandated duty to enforce the criminal laws of the State," and that a need exists for a resolution of the substantive questions presented so that the State may "fulfill its obligations." The judicial defendants are alleged to be antagonistic litigants on the basis of the fact that they have all "ruled certain provisions of the Safe Roads Act to be unconstitutional or otherwise have construed the statute contrary to the intent of the General Assembly," thereby taking "a position adverse to that of the State." The individual defendants are similarly alleged to be antagonistic in that they have each taken a position adverse to the State by motions in their civil or criminal cases.

The trial court determined that there was no subject matter jurisdiction alleged by virtue of these rulings or motions under the Declaratory Judgment Act. The order recites that such jurisdiction is lacking on the following bases: (1) the pleadings failed to disclose an actual or real existing controversy between antagonistic litigants; (2) the parties are involved in ongoing criminal prosecutions; (3) declaratory judgment would not terminate the uncertainty; and (4) the superior court had no authority to issue the writs of mandamus or prohibition against a district court judge.

A.

[3]  As to the alleged "antagonism" between the State and the judicial defendants, the trial court determined that there was no

adversity of interest between the parties over the validity and construction of the Safe Roads Act. The order states:

> Judges of the district court, who are sworn to support and uphold the United States and North Carolina Constitutions, and to apply and support the laws of this State not in violation of said Constitutions, are not "antagonistic litigants" with, nor do they have interests adverse to, the Attorney General or the people of North Carolina, as concerns the constitutionality of the Safe Roads Act. 1983 N.C. Sess. Laws c. 435, s. 1, *et seq.* Though any party may claim an "adverse interest" to a judge who rules against him in a case, judges are, as a matter of law, neutral, uninterested parties with no stake in the outcome of matters brought before them for judicial decisions, and are not, therefor, the adverse, "antagonistic litigants" contemplated by this jurisdictional prerequisite to declaratory relief sought pursuant to the Declaratory Judgment Act.

The trial court's reasoning on this issue is eminently sound and represents an entirely correct application of the law to the facts of this case. The judicial defendants, in their official capacity as judges of the district court, simply may not be considered as litigants antagonistic to either the Attorney General or the people of North Carolina as regards the validity of the Safe Roads Act.

In an effort to bolster its jurisdictional claims, the State contends that the trial court erred in ruling that judges necessarily have no interest in the results of the cases before them by virtue of the fact that they are sworn to uphold the law. The State maintains that the action of the judges in ruling that certain provisions of the Safe Roads Act were unconstitutional demonstrates that the judges are not "upholding" the law; that the "position" taken by a judge on the Act's constitutionality constitutes an "interest" in the matter in dispute; and therefore, judges who strike down portions of the Act as unconstitutional are parties antagonistic to the State with adverse interests in the dispute over the Act's validity. We do not agree.

First, the trial court correctly observed that the judges of the district court are sworn judicial officers. By their oath of office, district court judges swear (or affirm) to "administer justice *without favoritism to anyone or to the State*" and to "faithfully

and *impartially*" discharge the duties of office "*consistent with the Constitution and laws* of the State." N.C.G.S. § 11-11. Implicit in the sworn duties of a judge is the duty to determine whether a statute is consistent with the state and federal constitutions when the validity of that statute is properly challenged by a litigant appearing in a case before him. A judge is under no duty to uphold a legislative enactment which he determines to be in violation of the guarantees of either or both the federal and state constitutions. Consequently, in failing to "uphold" an unconstitutional statute, a judge cannot be said to assume an adversary relationship with the Attorney General or the people of the State.

By the same reasoning, the State's allegation that the judicial defendants are "antagonistic" in that they have construed certain provisions of the Safe Roads Act "contrary to the intent of the General Assembly" must be rejected. It is the duty of the judges, and not the Attorney General, to authoritatively determine what the intent of the legislature is in the course of their construction of a new statute. That officers of two branches of the government — the judicial and the executive — differ in opinion as to legislative intent does not place them in an adversarial relationship.

Moreover, in their capacity as district court judges, the judicial defendants stand completely neutral to all legal claims and arguments brought before them. As the United States Supreme Court recently noted in *United States v. Leon*, --- U.S. ---, ---, --- L.Ed. 2d ---, ---, 35 Crim. Law Rptr. 3273, 3279 (1984): "Judges and Magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions." In the same vein we have stated, "[i]t is axiomatic, of course, that it is the lawful right of every litigant to expect utter impartiality and neutrality in the judge who tries his case. . . . This right can neither be denied nor abridged." *Colonial Pipeline Co. v. Weaver*, 310 N.C. 93, 103, 310 S.E. 2d 338, 344 (1984). Indeed, it is the duty of the presiding judge under both the statutory and decisional law to excuse himself when he has an interest in the outcome of the case before him or when he has any doubt as to his ability to preside impartially or whenever his impartiality can be reasonably questioned. *See, e.g.*, N.C.G.S. § 15A-1223; *Bank v. Gillespie*, 291 N.C.

State ex rel. Edmisten v. Tucker

303, 230 S.E. 2d 375 (1976); *Ponder v. Davis*, 233 N.C. 699, 65 S.E. 2d 356 (1951).

Under the State's reasoning, if the judicial act of passing upon the constitutionality of a statute were sufficient to give the judge an "interest" in the matter, no judge could, consistent with the constitutional rights of litigants to a fair and impartial trial, ever render an opinion and ruling on a statute and decide the case before him. Such a result is patently absurd. A ruling by a district court judge, while conceivably having the incidental effect of providing support for a legal position adverse to that taken by the Attorney General, does not place the judge in the position of being either an advocate or an adversary of the Attorney General or of the people of this State. Nor does such a ruling give the judge an "interest in the matter in controversy." Judges of the district court may, under our system of government, differ with the executive, and for that matter, with the legislative branch as to the constitutionality of any given piece of legislation without that difference giving rise to an actual or justiciable controversy between them as adverse parties under the Declaratory Judgment Act. *Cf. Barbour v. Little*, 37 N.C. App. 686, 247 S.E. 2d 252, *cert. denied*, 295 N.C. 733, 248 S.E. 2d 862 (1978). To hold otherwise would seriously undermine the system of checks and balances inherent in our government's separation of powers and threaten the very concept of an independent judiciary.

Furthermore, common sense dictates that the judicial defendants stand as neutral judicial officers in the legal controversy between the Attorney General, when he brings an action on behalf of the people of the State, and those citizens accused of violating the Safe Roads Act. Whether any provision of the Safe Roads Act is now or later determined by any superior court of the trial division, or any court of the appellate division, to be constitutional or unconstitutional, is of no concern to the *personal* rights, status and legal relations of the judicial defendants.

An "actual or real and existing controversy" means a controversy that arises out of the opposing contentions of the parties as to the validity or construction of a statute or ordinance, whereby the parties to the action have or may have legal rights, or are or may be under legal liabilities which are involved in the controversy. *Consumers Power v. Power Co.*, 285 N.C. 434, 206 S.E.

2d 178; *Light Co. v. Iseley*, 203 N.C. 811, 167 S.E. 56. It is neither alleged in the complaint, nor claimed by the judicial defendants, that they have any legal rights, or are under any legal liabilities, that are in any way involved with the constitutionality of the Safe Roads Act.

This Court's definition of an "actual or real and existing controversy" between "antagonistic litigants" in this context is consistent with the express requirements of the Declaratory Judgment Act itself. N.C.G.S. § 1-260 entitled *Parties*, provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. . . ." As to whether this section makes one a necessary party to a declaratory action, this Court has determined that a person is a necessary party only when he has or claims to have a material interest in the subject matter of the complaint; that is, when he is so vitally interested in the controversy involved that a valid judgment cannot be entered in the action which would completely and finally determine the controversy, without that person's presence as a party. *Construction Company v. Board of Education*, 278 N.C. 633, 180 S.E. 2d 818 (1971). Again, it is neither alleged by the complaint, nor claimed by the judicial defendants, that they have any vital or material interest at stake in the constitutionality of the Safe Roads Act.

This principle, that a judge of a trial court has no interest sufficient to create an actual or real existing controversy in a ruling of law made by him when such ruling is made the subject of a declaratory judgment action in a superior court, was implicitly recognized by this Court in *Fuquay Springs v. Rowland*, 239 N.C. 299, 79 S.E. 2d 774 (1954). In *Rowland*, the district court judge directed the court clerk not to tax certain fees in criminal actions in cases brought before him. The Town of Fuquay Springs, claiming a financial interest in the fees to be collected, instituted a civil proceeding under the Declaratory Judgment Act against, *inter alia*, the judge, seeking a declaration as to the items of cost which are properly assessable in a criminal case. The superior court denied the judge's demurrer and directed the clerk to follow a schedule of fees. This Court dismissed the action as to the judicial defendant, stating that "A judge of a court of this State is not subject to civil action for errors committed in the discharge of

his official duties." As to the propriety of the form of action chosen, the Court stated:

> While we concede that the Declaratory Judgment Act . . . is comprehensive in scope and purpose, it does not and was not intended to embrace such an action as this. We cannot perceive that the legislature, in enacting that statute, intended to vest in Superior Court judges the general power to oversee, direct, or instruct officials of inferior courts in the discharge of their official duties.

*Fuquay Springs v. Rowland*, 239 N.C. at 301, 79 S.E. 2d at 776.

The State contends that the judicial defendants do have an interest adverse to that of the State with respect to their personal rights, status or other legal relations in that they should fear that the State may seek a writ of mandamus or prohibition against them should they continue to construe the Safe Roads Act "contrary to the legislative intent" in the future. Citing language from the recent United States Supreme Court case of *Pulliam v. Allen*, --- U.S. ---, 80 L.Ed. 2d 565 (1984), the State asserts that a judge named in a petition for writ of mandamus himself becomes a party to the action. *See also In re Greene*, 297 N.C. 305, 255 S.E. 2d 142 (1979).

First, the State *assumes* that a writ of mandamus could properly be obtained to direct a judicial officer acting in his judicial capacity, to rule a statute constitutional. For the reasons set forth in Part III of this opinion, we disagree. Second, even assuming *arguendo* that mandamus could properly issue under these circumstances, the State's argument lacks merit.

While it may be true that a trial court judge would have an interest in whether or not a writ is filed against him, that interest is not the kind of "adverse interest" and "stake in the outcome" that is a jurisdictional prerequisite to relief under the Declaratory Judgment Act. Again, "adverse interest" under that Act is an actual interest by the parties in the ultimate resolution of the facts and contentions of law concerning which a declaratory judgment is sought, and not the interest a judge might have in whether or not a writ is filed against him questioning the correctness of his ruling in a case.

Furthermore, assuming *arguendo* that district court judges are the proper party defendants in an action to determine the constitutionality of the Safe Roads Act, the issue remains as to whether the Attorney General is the proper plaintiff. We have often stated that the validity of a statute may be determined under the Declaratory Judgment Act only when some specific provision thereof is challenged by a person who is *directly* and *adversely* affected thereby. *Greensboro v. Wall*, 247 N.C. 516, 101 S.E. 2d 413 (1958). *See also Woodard v. Carteret County*, 270 N.C. 55, 153 S.E. 2d 809 (1967); *Calcutt v. McGeachy*, 213 N.C. 1, 195 S.E. 49 (1938). The reasoning behind this requirement in the context of constitutional adjudication is directly applicable to the case under discussion, and warrants repetition in full:

> The judicial duty of passing upon the constitutionality of an Act of Congress or of an Act of the General Assembly is one "of great gravity and delicacy. . . ." Since "every presumption is to be indulged in favor of" the validity of an Act of the General Assembly . . . the established judicial policy is to refrain from deciding constitutional questions unless (1) the judicial power is properly invoked, and (2) it is necessary to do so in order to protect the constitutional rights of a party to the action. . . . "*A party who is not personally injured by a statute is not permitted to assail its validity*";. . . . ⁄
>
> *Persons directly and adversely affected by the decision may be expected to analyze and bring to the attention of the court all facets of a legal problem. Clear and sound judicial decisions may be expected when specific legal problems are tested by fire in the crucible of actual controversy.* So-called friendly suits, where, regardless of form, all parties seek the same result, are "quicksands of the law." *A fortiori*, this is true when the Court is asked to pass upon a complicated and comprehensive statute and multiple actions thereunder when no particular provision thereof or action thereunder is drawn into focus and specifically challenged by a person directly and adversely affected thereby. (Citations omitted.) (Emphasis added.)

*Greensboro v. Wall*, 247 N.C. at 520, 101 S.E. 2d at 416.

When we examine the executive and judicial parties to this lawsuit, the absence of a "crucible of actual controversy" between

persons directly affected by the Safe Roads Act is manifest. The State relies upon the statutory authority of the Attorney General to provide such a directly affected interest, citing N.C.G.S. § 114-2(8)(a) (Attorney General authorized to institute proceedings affecting the public interest) and N.C.G.S. § 1-260 (requiring litigants to serve the Attorney General with process and permitting the Attorney General to be heard whenever the constitutionality of a statute is challenged). However, while these statutes may provide the Attorney General with *standing* to appear in proceedings in which the constitutionality of a statute is properly challenged, or to institute a proceeding against a proper party defendant where the public interest so requires, such standing does not supply the adversarial relationship necessary to support jurisdiction under the Declaratory Judgment Act.

As we noted earlier, whether any provision of the Safe Roads Act is now or later determined to be constitutionally valid or infirm is of *no* concern to the personal rights, status and legal relations of the judicial defendants. The jurisdictional prerequisite of an actual and existing case or controversy between antagonistic litigants stands to insure that when a dispute is brought before a judge for issuance of a declaratory judgment, all parties will be sufficiently and sincerely interested and motivated by their stake in the outcome of the litigation to present all facets of the issue under consideration. Clearly it is the individual defendants who possess such direct interests in the outcome of the legal issues alleged in the Attorney General's complaint, and not the district court judges who presided over their criminal trials.

In conclusion, although the Attorney General has a "compelling interest" in the enforcement of the criminal laws, such an interest does not entitle him to maintain a declaratory judgment proceeding against judges of the district court who rule adversely to the State in the discharge of *their* constitutionally mandated duties to exercise the judicial power in deciding cases brought before them. The judicial rulings at issue simply may not be considered *impediments* to the discharge of the Attorney General's duties; they are necessary *constituent parts* in the process of criminal justice which both parties serve. Accordingly, the trial court correctly concluded that the judicial defendants are not "antagonistic litigants" with, nor parties with adverse interests to, the Attorney General or the people of North Carolina, as con-

cerns the Safe Roads Act, and properly dismissed the complaint as to the judges on this basis.

## B.

[4] In a related argument, the State attempts to bootstrap its claims of jurisdiction as to the judicial defendants onto the actual controversy alleged to exist between the State and the individual defendants in whose criminal cases the questioned judicial rulings were made. The trial court apparently rejected this contention on the grounds that the court is without subject matter jurisdiction to grant declaratory relief, in the form of a determination of the constitutionality of a criminal statute, as to *parties* who are involved in an ongoing criminal prosecution. The trial court reasoned that the same issues concerning the constitutionality of the criminal statute may be properly determined in an orderly manner by the court having jurisdiction to try the guilt or innocence of the criminal defendant. Thus, no underlying real or existing controversy remained as to those issues which required declaratory relief in an independent legal proceeding as to either the judicial or the individual defendants.

The State concedes that the constitutionality of a criminal statute may be determined in the course of a criminal trial, but argues that "the existence or nonexistence of another forum in which the Attorney General might resolve these issues appears irrelevant" to the determination of jurisdiction pursuant to the Declaratory Judgment Act. The State makes the following arguments in support of its claim of subject matter jurisdiction:

1. A declaratory judgment action may lie to determine matters of law and potential criminal liability under a criminal statute when that statute threatens protected interests.

2. The State of North Carolina possesses a compelling State interest in highway safety and in the removal of drunken drivers from its highways.

3. The Attorney General's statutory authority to institute proceedings affecting a public interest is at least as adequate as a criminal's property interest to support jurisdiction in this case.

4. The ordinary trial and appellate process of constitutional adjudication is slow, cumbersome and inefficient.

5. The Declaratory Judgment Act provides an independent cause of action separate and apart from other litigation for the determination of the constitutionality of and matters of law found in a criminal statute.

We disagree.

First, it is elementary that declaratory judgment statutes themselves are not jurisdictional and they do not create or grant jurisdiction where it does not otherwise exist, nor do they enlarge or extend the jurisdiction of the courts over the subject matter or the parties. 22 Am. Jur. 2d Declaratory Judgments § 75 (1965). Contrary to the State's assertion, the Act creates a new remedy, not a new source of legal rights and obligations.

In the abstract it may be said that the validity and proper construction of the Safe Roads Act are proper *subjects* for declaratory judgment. Moreover, we have recognized that a petition for declaratory judgment is a particularly appropriate means for determining the constitutionality of a statute when the parties' desire and the public need requires a speedy determination of the important public interests involved. *See Woodard v. Carteret County*, 270 N.C. 55, 153 S.E. 2d 809. It is beyond dispute that important public interests are implicated by the uncertainty surrounding the proper construction and validity of the Safe Roads Act and that the public need for a speedy judicial resolution of the questions raised thereunder is manifest. However, the conceded public interest in the expeditious determination of the Act's constitutionality may not be allowed to supplant the fundamental jurisdictional prerequisite that an actual or real existing controversy between antagonistic litigants be disclosed by the pleadings before declaratory relief may be obtained. *See Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404.

Nor may the desire to "accelerate" the judicial process displace the general rule that courts will not entertain a declaratory judgment proceeding if there is pending, at the time of commencement of the action for declaratory relief, another action in which the same persons are parties and in which the same issues involved in the declaratory action may be adjudicated. 22 Am.

Jur. 2d Declaratory Judgments § 16. In such cases, it is generally held that there exists no actual or real existing controversy with which to invoke the subject matter jurisdiction of the latter court. *See, e.g., Trimble v. City of Prichard,* 438 So. 2d 745 (Ala. 1983); *Sim v. Comiskey,* 216 Neb. 83, 341 N.W. 2d 611 (1983); *Haas & Haynie Corp. v. Pacific Millwork Supply,* 2 Hawaii App. 132, 627 P. 2d 291 (1981).

Furthermore, the general rule against entertaining a declaratory judgment proceeding if there is a pending action involving the same parties and issues has particular applicability in criminal cases. It is widely held that a declaratory judgment is not available to restrain enforcement of a criminal prosecution. 22 Am. Jur. 2d Declaratory Judgments § 24. Such relief is "particularly inappropriate where a criminal action involving the identical question is already pending." *Id.* at 868. In *Jernigan v. State,* 279 N.C. 556, 184 S.E. 2d 259 (1971), we discussed this rule as it applies to a determination of the constitutionality of a criminal statute.

A declaratory judgment is a civil remedy which may not be resorted to to try ordinary matters of guilt or innocence. It will not be granted when its only effect is to determine questions which properly should be decided in a criminal action. 22 Am. Jur. 2d *Declaratory Judgments* § 28 (1965); Annot., *Declaratory Relief—Criminal Statutes,* 10 A.L.R. 3d 727 (1966). For instance, one charged with the violation of a statute is not entitled to a declaratory judgment adjudicating its constitutionality, a matter which can be authoritatively settled in the criminal action. *Spence v. Cole,* 137 F. 2d 71 (4th Cir. 1943). *See Chadwick v. Salter,* 254 N.C. 389, 119 S.E. 2d 158; 26 C.J.S. *Declaratory Judgments* § 33 (1956). "*The rationale seems to be that if the facts upon which the propriety of a criminal prosecution are in dispute, the dispute ought to be resolved by the trier of the facts in a criminal prosecution in accordance with the rules governing criminal cases. . . . This reasoning, however, is inapplicable if the crucial question is one of law, since the question of law will be decided by the court in any event and not by the triers of the facts.*" *Bunis v. Conway,* 234 N.Y.S. 2d 435, 437, 17 App. Div. 2d 207. *See* 22 Am. Jur. 2d *Declaratory Judgments* § 24 (1965); Annot., 10 A.L.R. 3d 733 (1966). . . .

> *The courts do not lack power to grant a declaratory judgment merely because a questioned statute relates to penal matters.* When a plaintiff has a property interest which may be adversely affected by the enforcement of the criminal statute, he may maintain an action under the Declaratory Judgment Act to determine the validity of the statute in protection of his property rights. *Calcutt v. McGeachy,* 213 N.C. 1, 195 S.E. 49; *Bryarly v. State,* 232 Ind. 47, 111 N.E. 2d 277 (1953), and cases therein cited. (Emphasis added.)

*Id.* at 560-61, 184 S.E. 2d at 263-64.

The State places great reliance upon the emphasized portions of *Jernigan* in support of its contentions (1) that "a declaratory judgment action may lie to determine matters of law and potential criminal liability under a criminal statute when that statute threatens a protected interest"; (2) that the "State of North Carolina possesses a compelling State interest in highway safety and in the removal of drunken drivers from its highways"; and (3) that the "Attorney General's statutory authority is at least as adequate as a criminal's property interest to support jurisdiction in this case."

The State's reliance upon *Jernigan* is misplaced for several reasons. The key to whether or not declaratory relief is available to determine the constitutionality of a criminal statute is whether the *plaintiff* can demonstrate that a criminal prosecution is imminent or threatened, and that he stands to suffer the loss of either fundamental human rights or property interests if the criminal prosecution is begun and the criminal statute is enforced. *See Jernigan v. State,* 279 N.C. at 562, 184 S.E. 2d at 264; *Calcutt v. McGeachy,* 213 N.C. at 4, 195 S.E. at 51. If a plaintiff alleges these facts in his complaint, he has stated a cause of action for declaratory relief. If no criminal prosecution is imminent or threatened, however, or if the criminal prosecution has already begun, declaratory relief by a separate judicial tribunal is inappropriate.

Furthermore, the State has overstated the scope of *Jernigan* in permitting declaratory relief under statutes "relat[ing] to penal matters." In *Jernigan,* an inmate serving a sentence for a crime committed during his parole challenged a statute governing sentencing by way of the Declaratory Judgment Act. This Court ob-

served that the sentencing statute was not a criminal law, in the sense that it does not define or prohibit specific crimes and held that declaratory judgment was appropriate since the crucial question was a "pure question of law," decided by the court and not by the triers of fact. 279 N.C. at 561, 184 S.E. 2d at 263. The nature of the plaintiff's interest in the matter in controversy upon which a declaration was sought was characterized in the following manner:

> If the statute is unconstitutional, petitioner will be entitled to his release from prison at the conclusion of the ten-year-sentence he is now serving. If the statute is constitutional, at the completion of his present sentence he will begin the unserved portions of the previous sentences from which he was paroled. *Fundamental rights are involved.* Petitioner is entitled to know what effect the statute has upon his future. (Emphasis added.)

279 N.C. at 562, 184 S.E. 2d at 264.

Similarly, in *Calcutt v. McGeachy*, 213 N.C. 1, 195 S.E. 49 we stated that the jurisdiction of a court under the Uniform Declaratory Judgment Act extends to penal statutes "only insofar as the legislative act . . . affects the civil 'rights, status and other relations' in the present actual controversy between the parties." *Id.* at 4, 195 S.E. at 51. The plaintiff in *Calcutt* was engaged in the business of managing and selling, in both intra and interstate commerce, amusement machines and was threatened with prosecution under a statute making the possession of certain types of slot machines illegal and authorizing their confiscation. Jurisdiction was therefore premised upon the direct effect of the penal statute on the plaintiff in his trade or business. Thus, the nature of the legal rights and question to be decided under the criminal statute are relevant to the determination of whether declaratory relief is appropriate even when the issue may be characterized as a "pure question of law."

This is consistent with the rule in other jurisdictions in which courts have held that, under certain circumstances, declaratory judgments may be entertained on matters of criminal law. In general, those cases have involved questions of whether a particular publication, unchanging in nature, is obscene as a matter of law, or whether plaintiffs with vested proprietary or business

interests will be irreparably harmed if a statute is enforced. *See, e.g., Bunis v. Conway*, 17 A.D. 2d 207, 234 N.Y.S. 2d 435 (1962), *app. dis'd*, 12 N.Y. 2d 882, 237 N.Y.S. 2d 993, 188 N.E. 2d 260 (1963) (question of obscenity of a particular book appropriate for declaratory judgment because it is solely a question of law, not fact, and relief prevents informal censorship by police and district attorney); *Doyle v. Clark*, 220 Ind. 271, 41 N.E. 2d 949, *app. dis'd*, 317 U.S. 590, 87 L.Ed. 483 (1942) (language of declaratory judgment act broad enough to determine validity of penal statute prohibiting display of iced beer because the penal statute affected persons in their trade or business).

Although many of the questions alleged in the Attorney General's complaint upon which a declaration is sought may be denominated "pure questions of law," such a showing alone is insufficient to invoke the trial court's jurisdiction under the Declaratory Judgment Act. The jurisdictional prerequisite of adverse parties with a stake in the outcome of the matters in dispute as it affects their civil rights, status and other relations remains, and has not been satisfied in this case.

It is evident that the Attorney General has alleged no direct interest in the constitutionality of the Safe Roads Act comparable to the interests alleged by the plaintiffs in both *Jernigan v. State* and *Calcutt v. McGeachy*. The State's interest in the removal of drunken drivers from its highways and the enforcement of the Safe Roads Act will be adequately served through the normal channels of criminal prosecution and appeal. We are cognizant of the fact that driving while impaired prosecutions represent an unfortunately significant portion of the district court calendar. As a consequence, any successful defense challenge to the provisions of the Safe Roads Act will have a disproportionately large impact on the disposition of other cases as compared to similar challenges to criminal laws which affect fewer of our citizens. However, this problem is merely an unfortunate by-product of the operation of an orderly criminal justice system which time and experience have shown to be both reliable and efficacious.

No threat of irreparable injury has been alleged on the part of the State which would warrant the circumvention of the ordinary processes of the criminal justice system. Under circumstances such as these, the criminal defendant or potential

criminal defendant would be barred from bringing an independent declaratory judgment proceeding seeking restraint of an ongoing criminal prosecution. *See Chadwick v. Salter*, 254 N.C. 389, 119 S.E. 2d 158 (1961). The State has presented no convincing argument for permitting the Attorney General to maintain such an action under the facts alleged in the complaint.

Furthermore, the lack of the pendency of criminal prosecutions in either *Jernigan v. State* or *Calcutt v. McGeachy* was critical to this Court's finding of subject matter jurisdiction under the Declaratory Judgment Act. Here, the Attorney General's complaint alleges as its subject matter defense motions and judicial rulings involving some fourteen different questions which arose under the main "driving while impaired" provisions of the Safe Roads Act during the course of the individual defendants' criminal prosecutions or civil revocation proceedings. With one exception,[4] all of the cases named in the complaint were pending for disposition or review in either the trial or appellate divisions at the time this action was commenced. Therefore, the general rule against entertaining a declaratory judgment complaint if there is simultaneously pending either a criminal or civil action involving the same parties and issues is directly applicable to the facts of this case. The interests of the State and of the individual defendants under the Safe Roads Act are matters which can be authoritatively settled in the various pending criminal prosecutions and civil revocation proceedings in an orderly and thorough manner.

The issues raised concerning the construction and validity of the Safe Roads Act in the criminal prosecutions and civil revocation proceedings of the individual defendants may not, therefore, serve as real existing controversies to establish jurisdiction under

---

4. The only case which was not pending at the time the complaint was filed is *State v. Diana Sapp*, (Durham County, 83CR30792). That case involved the constitutionality of N.C.G.S. § 20-139.1(e1) insofar as it permits the admission of the chemical analyst's affidavit into evidence in the district court trial of a person charged with driving while impaired. Judge David Q. LeBarre ruled the provision unconstitutional as violative of the defendant's sixth amendment right of confrontation; refused to admit the affidavit into evidence under it; and consequently found the defendant not guilty. The State did not name Diana Sapp as a defendant in this action, and has not appealed from the dismissal of the complaint as to Judge LeBarre. Therefore, the question of the propriety of the State's seeking declaratory relief as to rulings entered in closed criminal cases, although addressed by the trial court, is not presented for review in this appeal.

the Declaratory Judgment Act between the State and the individual defendants. For this reason, the State may not successfully bootstrap its jurisdictional allegations against the judicial defendants for the rulings they entered on defense motions in those criminal trials onto its allegations against the individual defendants. The correctness of the judicial rulings in the individual defendants' criminal trials will be adequately addressed by both the State and the real parties in interest as those appeals work their way through the trial and appellate process. As the State has based its allegations of an actual or real existing controversy on cases currently pending in courts of competent jurisdiction, the trial court correctly dismissed the complaint as to all defendants for lack of jurisdiction.

## C.

We make one final observation with regard to the institution of this lawsuit. All of the cases named in the complaint were pending before courts of competent jurisdiction at the time of commencement of this action. In all but a handful of these cases, the State had obtained a judgment at either the district or superior court level of the trial division and, where permissible, appeal had been noted to the appellate division by either the State or the individual defendant. With regard to the latter category of cases, those upon which a judgment has previously been entered, it is clear that the underlying controversy has been settled, subject only to further judicial review through the statutory appeal process.

The ostensible purpose of a civil declaratory judgment proceeding joining the fifteen individual defendants and the seven judicial defendants into a single lawsuit was to obtain an "accelerated" review of all of the constitutional challenges lodged and not yet ruled upon as well as those challenges upon which judgment has been entered and appeals noted.

It is clear, however, that the Declaratory Judgment Act may not be used as a substitute for the traditional processes of adjudication. The rule is well-established that the Declaratory Judgment Act is not a permissible vehicle by which to attack a prior judgment, so long as the prior judgment was entered by a court of competent jurisdiction. *Howland v. Stitzer*, 231 N.C. 528, 58 S.E. 2d 104 (1950). The courts of other states have similarly con-

strued the Uniform Declaratory Judgment Act and have consistently dismissed complaints seeking declaratory relief where the action was no more than an attempt to review a prior judgment entered by a court of competent jurisdiction. *See, e.g., Flanary v. Rowlett,* 612 S.W. 2d 47 (Mo. App. 1981); *Crofts v. Crofts,* 21 Utah 2d 332, 445 P. 2d 701 (1968); *Mills v. Mills,* 512 P. 2d 143 (Okla. 1973); *Speaker v. Lawler,* 463 S.W. 2d 741 (Tex. Civ. App. 1971); *Glassford v. Glassford,* 76 Ariz. 220, 262 P. 2d 382 (1953).

The reasons for this long-standing rule are two-fold. First, if this were not the rule, there would never be an end to litigation in any given case; a dissatisfied litigant could continually bring declaratory judgment actions against adverse judicial rulings until satisfactory rulings were obtained. Second, without this rule, declaratory judgment actions could be used to circumvent the statutory appeal process. *See Alabama Public Service Com'n v. AAA Motor Lines, Inc.,* 272 Ala. 362, 131 So. 2d 172, *cert. denied,* 368 U.S. 896, 7 L.Ed. 2d 93 (1961).

In *Fuquay Springs v. Rowland,* 239 N.C. 299, 79 S.E. 2d 774, this Court clearly stated that the Declaratory Judgment Act was not intended by our General Assembly to vest in the superior courts of the State the power to "oversee, supervise, direct, or instruct officials of inferior courts in the discharge of their official duties." *Id.* at 301, 79 S.E. 2d at 776. The soundness of this principle is self-evident and we reaffirm the rule today. In order that we insure the survival of an independent judiciary in this State, the judges of the district courts may not be made subject to a civil declaratory judgment action by the dissatisfied litigant when the judge is called upon to construe a statute, ordinance or other document in the course of deciding the case before him. Differences of opinion between the losing party and the presiding judge concerning the meaning of a statute simply do not give rise to an "actual controversy" justiciable under the Declaratory Judgment Act; they give rise to the basis for an appeal.

This construction of the Declaratory Judgment Act is in conformity with the majority view that a complaint will be dismissed when it is merely an attempt by the plaintiff to use the Act as a substitute for appeal from a lower court ruling or judgment. *See, e.g., Tucker v. Board of Ed. of Town of Norfolk,* 190 Conn. 748,

462 A. 2d 385 (1983); *Conoco, Inc. v. State Dept. of Health, Etc.,* 651 P. 2d 125 (Okla. 1982); *Tillman v. Sibbles,* 292 Ala. 355, 294 So. 2d 436 (1974).

The Supreme Court of Kansas aptly summarized the reasons behind the rule in *Williams v. Flood,* 124 Kan. 728, 262 P. 563 (1928). There, the plaintiff brought a declaratory judgment action in a superior court against the judge of the lower court on the basis of an adverse ruling by that judge in a separate case involving the plaintiff and another party. In dismissing the complaint the court stated:

> What is the controversy between the plaintiff and the defendant? It is one concerning the meaning of a statute; in other words, one concerning what the law is. *Controversies involving the interpretation of statutes may be settled under the Declaratory Judgment Law, but those controversies must include right claimed by one of the parties and denied by the other. Here the plaintiff is not claiming any right and the defendant is not denying the plaintiff any right. The controversy is such a one as is likely to arise in the trial of any action. Controversies of that character cannot be determined by this court except on an appeal in the action in which the controversy arises. It is not such a controversy as gives to the party complaining any right of action under the statute against the court who may be making a mistake of law.* (Emphasis added.)

124 Kan. at 729-30, 262 P. at 563-64.

We fully agree with this interpretation of the scope of jurisdiction under the Declaratory Judgment Act: the Act may not be used to obtain review of lower court rulings by our superior courts. The remedies for those rare instances of judicial abuse and derogation of duty, or for actions taken which are outside the authority of the judge, or for failure to perform a ministerial duty of the office remain the extraordinary writs of mandamus or prohibition. In the ordinary course of affairs, such as are presented by the cases involved in this matter, review of lower court rulings must be pursued through the orderly statutory appeal process, and not by collateral lawsuit in the form of an action under the Declaratory Judgment Act.

## D.

In conclusion, the trial court properly dismissed the complaint for failure to disclose the existence of an actual or real existing controversy between the parties to the action necessary to invoke the court's jurisdiction under the Declaratory Judgment Act. *Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404; *Tryon v. Power Company*, 222 N.C. 200, 22 S.E. 2d 450. As to the judicial defendants, no adversity of interests exists and they may not be considered as parties to the underlying controversies in the criminal prosecutions over which they presided in their official capacities. As to the individual defendants, although adversity of interest as to the validity and construction of the Safe Roads Act was properly alleged, no actual or real existing controversy between these parties and the State may be premised upon pending cases or cases in which judgments have been entered by courts of competent jurisdiction.

Accordingly, because the State failed to allege facts disclosing the existence of these necessary jurisdictional prerequisites in its complaint, the trial court was without jurisdiction "of a merely advisory nature to construe and declare the law." *Tryon v. Power Co.*, 222 N.C. at 203, 22 S.E. 2d at 452. Under these circumstances, dismissal of the complaint was entirely proper.

In view of our conclusion that the trial court correctly dismissed the complaint on the grounds that it failed to disclose the existence of an actual or real existing controversy between antagonistic litigants as to all defendants, we need not address the trial court's alternative ground for dismissal of the complaint under N.C.G.S. § 1-257 (permitting court to refuse to render a declaratory judgment where court determines in its discretion that the judgment would not terminate the uncertainty or controversy over the issues raised).

## III.

[5] In its complaint, the State requested that the court treat the complaint as a petition for writ of mandamus or prohibition in the event the trial court found no jurisdiction pursuant to the Declaratory Judgment Act, and requested that the court order the judicial defendants to cease their "erroneous" interpretations of

the constitutionality of the challenged sections of the Safe Roads Act.

The trial court determined that it was without jurisdiction to grant such relief for the following reasons:

> As to the Judicial Defendants, this court is without authority or jurisdiction to issue the remedial writs of *mandamus* or *prohibition* to judges of the district court of the trial division. Authority and jurisdiction to issue these extraordinary writs to courts of the trial division is vested solely in the courts of the appellate division. Article IV, Section 12 of the North Carolina Constitution vests only the North Carolina Supreme Court with jurisdiction to issue the remedial writs. NC Gen Stat § 7A-32 expands this authority, and affords jurisdiction to both the North Carolina Supreme Court and the North Carolina Court of Appeals to issue the remedial writs. Rules 1 and 22 of the North Carolina Rules of Appellate Procedure further clarify and detail this jurisdictional grant to the appellate division. No provision is made in either the North Carolina Constitution, or in any statute or rule of this state, that affords a superior court of the trial division authority or jurisdiction to issue the remedial writs of *mandamus* or *prohibition* to a judge of the district court of the trial division.

For the reasons stated in *In re Redwine*, 312 N.C. 482, 322 S.E. 2d 769 (1984), we hold that the trial court correctly denied the State's petition for writ of mandamus or prohibition in this case.

We decline to exercise this Court's authority to treat this appeal as a petition to this Court for writs of mandamus or prohibition.

IV.

[6]  In the concluding section of its brief, the State requests this Court to either decide the merits of the claims in the complaint pursuant to our supervisory power as set forth in article IV, section 12 of the North Carolina Constitution, or to certify the matter back to superior court for findings of fact and certification back to this Court for final decision. We decline to do so for several reasons.

First, as is evidenced by the terms of the State's request itself, no findings of fact have been entered by the trial court as to any of the State's substantive claims. Indeed, the judicial defendants have not yet filed pleadings responsive to the allegations in the complaint. Of the fifteen individual defendants, some have answered the complaint and moved to dismiss it, while others have only filed motions to dismiss.

The trial court has only ruled upon the jurisdictional issues of this case, and it is only the issues raised by this ruling that are the "subject matter of this appeal." By the express terms of the North Carolina Constitution, the appellate jurisdiction of this Court is "to review upon appeal any decision of the courts below." N.C. Const., art. IV, § 12(1). We have interpreted this provision to mean that this Court's function "is to review alleged errors and rulings of the trial court, and unless and until it is shown that the trial court ruled on a particular question, it is not given to us to make specific rulings thereon." *Greene v. Spivey*, 236 N.C. 435, 442, 73 S.E. 2d 488, 493 (1952); *accord, Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412 (1976).

Aside from the obvious procedural and jurisdictional bars to our reaching the substantive claims presented by the complaint, the vast majority of the questions of law upon which the State seeks declaratory relief have been addressed and decided in five other "driving while impaired" cases heard in this Court on 9 October 1984 and filed contemporaneously with this case. *See State v. Smith*, 312 N.C. 361, 323 S.E. 2d 316 (1984); *State v. Howren*, 312 N.C. 454, 323 S.E. 2d 335 (1984); *State v. Rose*, 312 N.C. 441, 323 S.E. 2d 339 (1984); *State v. Coker*, 312 N.C. 432, 323 S.E. 2d 343 (1984); *State v. Shuping*, 312 N.C. 421, 323 S.E. 2d 350 (1984).

The only issues alleged in the complaint and not addressed in the above mentioned cases concern (1) the constitutionality of N.C.G.S. § 15A-534.2 (pretrial detention of impaired drivers); N.C.G.S. § 20-16.5 (pretrial civil license revocation); and N.C.G.S. § 20-179 (sentencing; enhancement of punishment by prior DUI convictions); and (2) whether N.C.G.S. § 20-138.1(a) makes the conduct described as impaired driving a criminal offense. These is-

sues arise in the cases of individual defendants Johnson, Hartwig, Tew, Henry, Howard, Crow and Massey. The record on appeal concerning these cases consists of no more than the allegations contained in the State's complaint. Of the individual defendants who are involved in these cases, some have filed only motions to dismiss and no responsive pleadings. Others have filed both, and have controverted certain factual allegations of the State in their answers. Thus, the record on appeal is totally inadequate for the purposes of reaching a decision on the merits of these claims, even were we so disposed.

Conceivably, this Court could render an opinion on the abstract question of whether the challenged provisions of the Safe Roads Act are constitutional *as drawn*. However, it would be impossible, on the record before us, to make the determination of whether those provisions were constitutional *as applied to the individual defendants* upon whose challenges we are asked to rule. As we observed in *Greensboro v. Wall*, 247 N.C. at 520, 101 S.E. 2d at 416:

> [C]onfusion is caused "by speaking of an act as constitutional in a general sense. . . ." The validity or invalidity of a statute, in whole or in part, is to be determined in respect to its adverse impact upon personal or property rights in a specific factual situation.

What we have stated concerning the Declaratory Judgment Act has bearing upon our supervisory jurisdiction as well:

> The statute does not require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise. . . .

> "It is no part of the function of the courts, in the exercise of the judicial power vested in them by the constitution, to give advisory opinions, or to answer moot questions, or to maintain a legal bureau for those who may chance to be interested, for the time being, in the pursuit of some academic matter". . . . "The judicial power does not extend to a determination of abstract questions." (Citations omitted.)

*Tryon v. Power Co.*, 222 N.C. at 204, 22 S.E. 2d at 453.

In the interest of keeping our decisions within the traditional judicial function, we must decline the invitation to exercise our supervisory authority and reach the merits of the remaining substantive questions presented by the State's complaint at this time. The questions presented by these cases will have to await decision by the orderly process of judgment and appeal. For this reason also we decline to grant the State's request that we certify the matter back to the superior court for findings of fact and certification back to this Court for final decision in the cases of defendants Johnson, Hartwig, Tew, Henry, Howard, Crow and Massey.

We affirm the trial judge's order dismissing the complaint and petition against all defendants.

Affirmed.